UNITED STATES FEDERAL COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASE NO.: 8:25-CV-1200

MAXIMO MICHAEL GUEVARA,
An individual,

    Plaintiff,

vs.

JACOBS AUTOMOTIVE GROUP, INC.,
d/b/a JACOBS MITSUBISHI WESLEY CHAPEL,
a Florida Corporation, and
USF FEDERAL CREDIT UNION,
a Federal credit union.

    Defendant(s).
_____/

## AMENDED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

Plaintiff, MAXIMO MICHAEL GUEVARA, an individual, hereby sues Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, and alleges:

### Jurisdiction

1. This Court has jurisdiction under the Federal Odometer Act, 49 U.S.C. §32710 and 28 U.S.C. §§1331 and 1337, and has pendant jurisdiction over state claims under 28 U.S.C. §1367.

### Allegations as to Parties

2. At all times material hereto, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, ("**Dealership**") was licensed by the State of Florida as a dealer conducting new and used automobile sales in Alachua County, Florida.

3. USF FEDERAL CREDIT UNION ("**Holder**" or "**Lender**") is a Foreign Profit Company authorized to do business in Florida as a lender and a "sales finance company" as defined in Fla. Stat. § 520.02(19) and is a "holder" of a "retail installment contract" as defined in Fla. Stat. § 520.02(8).

4. At all times material hereto, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and Florida Statute §320.77(1)(a) and a "transferor" as said term is defined under 49 C.F.R. §590.3.

5. At all times material hereto, Plaintiff was *sui juris* and a resident of Duval County, Florida. Plaintiff is a "transferee" as said term is defined under 49 C.F.R. §580.3.

**Factual Allegations Common to All Counts**

6. On or about February 6, 2024, Plaintiff went to the Dealership to purview used automobiles with the intent of purchasing a vehicle for personal and household use.

7. In the course of the initial discussion with the Dealership's salesperson, Plaintiff advised the Dealership's salesperson that he needed reliable transportation

for personal and household purposes.

8. Plaintiff was directed by the Dealership to consider a 2021 Ford Transit Passenger Wagon, with a Vehicle Identification Number ending in 33005 (hereinafter the "**Vehicle**").

9. During the course of the transaction and prior to consummating the sale, the Dealership orally represented that the Vehicle was in excellent mechanical condition, well maintained and free of any collision related damage ("**Condition Representation**").

10. Plaintiff was concerned about future costs of repairs, which ultimately influenced his decision to purchase a late model vehicle with low mileage.

11. Plaintiff relayed his concerns about future repair costs to the salesperson assisting with the transaction who advised that Plaintiff could purchase an extended service contract at an additional cost that would cover any such repairs.

12. As part of the transaction to purchase the Vehicle, Dealership also represented to Plaintiff that certain third-party products would provide essential protections, maintenance, and repair coverage that were necessary for the reliable operation and upkeep of the Vehicle, knowing that such representations were false, misleading, or made with reckless disregard for the truth.

13. As a result of the Dealership's representations, Plaintiff was induced into purchasing the following products ("**Third Party Products**"):

      a. AVC Service Contract at a cost of $3,354.00;

      b. AVC Pre-Paid Maintenance Plan at a cost of $899.00;

      c. AVC Tire & Wheel Plan at a cost of $610.00; and

      d. AVC Key Protect Plan at a cost of $605.00.00

14. Having detrimentally relied upon on the Condition Representation and material non-disclosures as further discussed *infra*, Plaintiff agreed to purchase the Vehicle.

15. Plaintiff opted to finance the purchase of the Vehicle and had the Dealership originate a retail installment sales contract to obtain financing through Lender ("**RISC**").

16. A true and correct copy of the RISC is attached hereto and incorporated herein by reference as Exhibit "A."

17. Pursuant to the RISC, after applying his down-payment of Five Thousand and 00/100ths Dollars, Plaintiff financed Forty-Six Thousand One Hundred Ninety-Six and 10/100ths ($46,196.10) Dollars.

18. The cost of the Third-Party Products were financed as part of the transaction.

19. After Plaintiff completed the transaction to purchase and finance the Vehicle, Plaintiff took possession of the Vehicle upon the belief that he purchased reliable transportation.

20. Unbeknownst to the Plaintiff, at the time of the purchase of the Vehicle, the Vehicle had been previously titled in the name of PV Holding Corp ("**Avis**") and had been used in a daily rental car fleet under short term rentals.

21. Contrary to the requirements of Florida Statute §319.14, the Dealership knowingly and intentionally failed to affirmatively disclose the prior use of the Vehicle as a daily rental car at any time prior to its sale to Plaintiff.

22. Further, contrary to the requirements of Florida Statute §319.14, the Dealership knowingly and intentionally failed to obtain a title branded with the Vehicle's prior use as a short-term lease vehicle in Avis' rental car fleet.

23. At no point in time was the Plaintiff presented with a CarFax or similar vehicle history report to review in advance of his decision to purchase the Vehicle.

24. Following the consummation of the transaction, Dealership assigned the RISC to Lender upon unknown terms and for unknown consideration.

25. Shortly after consummating the transaction, the Vehicle began to experience anomalies that were not germane to a newer model, low-mileage vehicle.

26. Pursuant to the terms of the extended service contract, Plaintiff contacted the contract administrator, Assurant Vehicle Care ("**Assurant**"), expressing the need for repair assistance, on or about February 15, 2024.

27. In response, Assurant advised that it had no record of the Vehicle, but advised Mr. Guevara that the paperwork could take weeks to clear.

28. After waiting sometime, it became clear that the Dealership did not fund the service contract and had no intention of doing so.

29. Mr. Guevara then contacted the Dealership's finance manager, Jeremy Pohl, on February 16, 2024, asking to cancel all of the Third-Party Products.

30. After considerable delays, ultimately, Plaintiff was able to cancel the Third-Party Products and prorated reimbursements were applied to the balance of the loan in varying amounts.

31. As a part of the due diligence of Plaintiff in the preparation of the instant lawsuit, Plaintiff obtained the title history for the Vehicle from the Florida Department of Motor Vehicles ("Title History").

32. Upon review of the Title History, the Plaintiff was able to discern for the first time that the Vehicle had been previously used as a short-term lease vehicle in the Avis rental car fleet prior to the Plaintiff's purchase of the same.

33. In preparation for the instant suit, undersigned counsel for Plaintiff drafted and timely delivered a demand letter pursuant to Fla. Stat. §501.98 to the Dealership in excess of thirty (30) days prior to the filing of the instant suit.

34. In addition, Plaintiff delivered notice of his intent to revoke acceptance of the Vehicle.

35. Dealership failed to respond to the aforementioned correspondences or otherwise afford any relief to the Plaintiff.

36. Accordingly, all conditions precedent to bringing this action have occurred, have been performed, or have been waived.

37. Had the Plaintiff known the true history of the Vehicle's prior status as a short-term rental vehicle or true mechanical condition, he would have not purchased the Vehicle or paid significantly less for it.

38. The Plaintiff's damages include, but are not limited to, being deprived of accurate statutory information, paying substantially more for the Vehicle than it was worth, abnormally high maintenance costs for the Vehicle due to the prior rental usage and alternate transportation costs.

### Assignee Liability

39. Pursuant to 16 C.F.R. § 433, known more commonly as the "Federal Trade Commission Rule Regarding the Preservation of Consumer Claims and Defenses" or the "FTC Holder Rule" ("FTC Holder Rule"), Lender, as the assignee of the RISC, is subject to all claims and defenses of Plaintiff as a consumer and which are available against the Dealership as the credit-seller.

40. In compliance with the FTC Holder Rule, the RISC bears the following conspicuous language:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR

WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

41. Furthermore, Florida Statue § 516.31(2), known more commonly as the "Florida Holder Rule," provides in pertinent part the following:

> (2) Restriction on Certain Negotiable Instruments and Installment Contracts - A holder or assignee of any negotiable instrument or installment contract, other than a currently dated check, which originated from the purchase concerning consumer goods or services is subject to all claims or defenses of the consumer debtor against the seller of those consumer goods or services. A person's liability under this section may not exceed the amount owing to the person when that claim or defense is asserted against the person.

42. Pursuant to the FTC Holder Rule and the Florida Holder Rule, Plaintiff seeks recovery from Lender pursuant to a theory of derivative liability, for Dealership's transgressions as further set forth herein.

43. Specifically, Plaintiff seeks restitution of all installment payments made in furtherance of the RISC, rescission of the transaction in full and damages up to and including the present balance of indebtedness under the RISC.

44. Plaintiff avers that his claim is so large that it exceeds the remainder of any debt owed to Lender under the RISC.

## COUNT I
## ACTION FOR VIOLATION OF THE FEDERAL ODOMETER ACT
(Dealership and Holder)

45. Plaintiff reaffirms and realleges the allegations contained in Paragraphs

1 through 44 above as if set forth hereat in full.

46. At all times material hereto, Plaintiff was a "transferee" as said term is defined 49 C.F.R. §580.30.

47. At all times material, the Dealership was a "dealer" as said term is defined under 49 U.S.C. §32702(2) and a "transferor" as defined by 49 C.F.R. §580.30.

48. At all times material hereto, the Vehicle was a "motor vehicle" as said term is defined under 49 U.S.C. §32101(7).

49. The Dealership failed to provide Plaintiff with the actual title certificate for the Vehicle, for their examination and signature, as required by 49 U.S.C. §32705 and 49 C.F.R. §580.5.

50. The title certificate for the Vehicle clearly designated the Vehicle as a daily rental vehicle owned by PV Holding Corp., a holding corporation for Avis Budget rental cars.



51. A true and correct copy of the Title Certificate is attached hereto as

Exhibit "B."

52. By not producing the Title Certificate for inspection and signature, the Dealership was able to hide from Plaintiff the facts related to the prior ownership of the Vehicle including the fact that the Vehicle was previously used as a short-term lease vehicle.

53. Instead of complying with the requirements of the Act, the Dealership required Plaintiff to sign, *inter alia,* a motor vehicle title reassignment supplement, and an application for certificate of title (hereinafter referred to collectively as the "**Transfer Forms**") which did not disclose the designation of the Vehicle as a daily rental car and the prior ownership by Avis.

54. To the contrary, the Dealership affirmatively represented that the Vehicle's branding and use designation was for "Private Use" on the application for certificate of title ("**Prior Use Representation**"):

| Section 3: BRANDS, USAGE AND TYPE *(Check applicable types)* | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ☐Assembled from Parts | ☐Autonomous | ☐Bonded Title | ☐Custom | ☐Electric | ☐Flood | ☐Glider Kit | ☐ILEV | ☐Kit Car |
| ☐Long Term Lease | ☐Manuf. Buy Back | ☐Police Veh. | ■Private Use | ☐Rebuilt | ☐Replica | ☐Short Term Lease | ☐Street Rod | ☐Taxicab |

55. True and correct copies of the Transfer Forms are attached hereto as Composite Exhibit "C".

56. The Dealership designed and employed this tactic of requesting Plaintiff to sign the Transfer Forms instead of the actual title certificate as required under federal law with the specific intent of perpetuating a fraud and deception on

Plaintiff.

57. As an experienced motor vehicle dealer, the Dealership knew or should have known of the Act and its regulatory requirements regarding disclosures and deliberately and recklessly disregarded what the law required.

58. The Dealership deliberately deceived Plaintiff through the oral and written misrepresentations and non-disclosures referred to above.

59. The Dealership has violated the Act in that the Dealership made a false statement to a transferee in violation of 49 U.S.C. §32705(a) and 49 C.F.R. §580.4.

60. The Dealership violated the Act with the specific intent to defraud.

61. As a direct and proximate result of the violations of the Act, the Dealership is liable to Plaintiff in the sum of three times the actual damages or $10,000.00, whichever is greater.

62. Plaintiff has retained the undersigned counsel to represent his interest herein and is obligated to pay said counsel a reasonable fee for its services.

63. Pursuant to 49 U.S.C. §32710(b), Plaintiff is entitled to recover his reasonable attorneys' fees and court costs upon entry of judgment in his favor.

WHEREFORE, MAXIMO MICHAEL GUEVARA, an individual, demands judgment in his favor against Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, jointly and severally,

for damages, together with interest, court costs and attorneys' fees pursuant to 49 U.S.C. §32710(b).

## COUNT II
## ACTION FOR FRAUD
### (Dealership and Holder)

64. Plaintiff realleges and reaffirms the allegations contained in Paragraphs 1 through 44 above as if set forth hereat in full.

65. As more particularly described above, the Dealership misrepresented material facts concerning the transaction to purchase and finance the Vehicle.

66. The Dealership omitted material facts by failing to disclose that the Vehicle had been previously used as a daily rental car.

67. The Dealership knew that the representations above were false, or made such representations recklessly, when the Dealership had no reasonable grounds for believing those representations were true.

68. The Dealership knew that the omissions concerning the Vehicle were material and important.

69. The Dealership intended to deceive Plaintiff and Plaintiff relied upon the misrepresentations and omissions to his detriment.

70. As a direct and proximate result of the fraud and non-disclosures by the Dealership, Plaintiff has been damaged.

WHEREFORE, MAXIMO MICHAEL GUEVARA, an individual, demands

judgment for damages against Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, jointly and severally, together with costs.

## COUNT III
## ACTION FOR FRAUDULENT INDUCEMENT
(Dealership and Holder)

71. This is a claim for common law fraudulent inducement.

72. Plaintiff realleges and reaffirms the allegations contained in Paragraph 1 through 44 above as if set forth hereat in full.

73. As more particularly described above, Dealership induced Plaintiff into signing the RISC and consummating the transaction for the sale of the Vehicle by knowingly making misrepresentations of material fact and omitting material facts with the intent that Plaintiff rely on them to his detriment.

74. Dealership's misrepresentations of material fact and omissions of material fact were made and omitted with the intent that Plaintiff rely on them, or be deceived by them to his detriment.

75. Plaintiff justifiably relied upon the misrepresentations to his detriment and further, had Plaintiff been advised of the truth, Plaintiff would not have entered into the RISC.

76. As a result of the fraud and deceit by Dealership, the actual and

economic damages of Plaintiff include but are not limited to the diminution in value of the Vehicle as a result of it having an inaccurate odometer and increased maintenance costs associated with a vehicle of higher mileage.

WHEREFORE, MAXIMO MICHAEL GUEVARA, an individual, demands judgment for damages against Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, jointly and severally, together with costs.

## COUNT IV
## ACTION FOR BREACH OF EXPRESS WARRANTY
### (Dealership and Holder)

77. Plaintiff realleges and reaffirms the allegations contained in Paragraphs1 through 44 and 44-62 above as if set forth hereat in full.

78. From the various statements by Dealership, including the Condition Representation and Prior Use Representation, Dealership made an express warranty pursuant to Section 2-313 of the Uniform Commercial Code ("UCC") by both affirmation of fact or promise and by description of goods ("Express Warranty").

79. As evidenced by the title records and other evidence, Dealership has breached the Express Warranty.

80. As a direct and proximate result of the breach of the Express Warranty, Plaintiff has been damaged.

81. The damages of Plaintiff include but are not necessarily limited to the diminution in value of the Vehicle as a result of it having an inaccurate odometer and increased maintenance costs associated with a vehicle of higher mileage.

WHEREFORE, MAXIMO MICHAEL GUEVARA, an individual, demands judgment for damages against Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, jointly and severally, together with costs.

## COUNT V
## ACTION FOR REVOCATION OF ACCEPTANCE
### (Dealership and Holder)

82. This is a claim for revocation of acceptance.

83. Plaintiff reaffirms and realleges the allegations contained in Paragraphs 1 through 44 above as if set forth hereat in full.

84. Plaintiff accepted the Vehicle without discovering the above-described mechanical defects and misrepresentations regarding the prior use history of the Vehicle because Plaintiff was reasonably induced to accept the Vehicle based on Dealer's misrepresentations and the difficulty of discovering the above facts.

85. Dealer refused and continues to refuse to correct the nonconformities present in the subject vehicle.

86. The nonconformities substantially impair the value of the Vehicle.

87. Plaintiff notified Dealer, verbally and in writing, that Plaintiff was revoking acceptance.

88. Despite receipt of Plaintiff's notices, Dealer failed to resolve Plaintiff's dispute.

WHEREFORE, MAXIMO MICHAEL GUEVARA, an individual, demands judgment for damages against Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, jointly and severally, for the following:

A. Declaring acceptance has been properly revoked by Plaintiff and for damages incurred in revoking acceptance;

B. A refund of the entire purchase amount paid by Plaintiff for the subject vehicle;

C. Consequential, incidental and actual damages;

D. Costs, interest and attorneys' fees pursuant to 15 U.S.C. §2310(d)(2); and,

E. Such other relief this Court deems appropriate.

## COUNT VI
## FRAUD AND FRAUDULENT INDUCEMENT
(Dealership and Holder)

89. Plaintiff realleges and reaffirms the allegations contained in Paragraphs

1 through 44 above as if set forth hereat in full.

90. As more particularly described above, the Dealership misrepresented material facts concerning the value, coverage, and benefits of the Third-Party Products, including but not limited to the AVC Service Contract, AVC Pre-Paid Maintenance Plan, AVC Tire & Wheel Plan, and AVC Key Protect Plan.

91. The Dealership represented to Plaintiff that the Third-Party Products would provide essential protections, maintenance, and repair coverage that were necessary for the reliable operation and upkeep of the Vehicle, knowing that such representations were false, misleading, or made with reckless disregard for the truth.

92. Unbeknownst to Plaintiff at the time, the Dealership did not fund the Third-Party Products and had no intention of doing so, despite collecting payment and including the cost of said products in the Plaintiff's financing through the RISC.

93. The Dealership omitted material facts by failing to disclose that Plaintiff's purchase of the Third-Party Products would not result in actual coverage or benefits unless and until those products were separately funded and processed— an event the Dealership failed to ensure.

94. At the time the representations and omissions were made, the Dealership knew or should have known that Plaintiff was relying upon those statements in making the decision to purchase the Vehicle and finance the Third-Party Products.

95. The Dealership's misrepresentations and omissions were made with the intent to induce Plaintiff into purchasing and financing the Third-Party Products, thereby increasing the Dealership's profit on the transaction.

96. Plaintiff justifiably relied upon the false representations and material omissions of the Dealership in agreeing to purchase the Third-Party Products, which materially increased the amount financed under the RISC.

97. As a direct and proximate result of the Dealership's fraudulent conduct, Plaintiff was damaged, including but not limited to the costs of the Third-Party Products, interest accrued on the financed amounts, and loss of use of the promised protections.

WHEREFORE, MAXIMO MICHAEL GUEVARA, an individual, demands judgment for damages against Defendants, JACOBS AUTOMOTIVE GROUP, INC., d/b/a JACOBS MITSUBISHI WESLEY CHAPEL, a Florida Corporation, and USF FEDERAL CREDIT UNION, a Federal credit union, jointly and severally, together with costs.

## DEMAND FOR JURY TRIAL

Plaintiff, MAXIMO MICHAEL GUEVARA, an individual, pursuant to Rule 38(b), Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

Dated: May 13, 2025

/s/ Joshua E. Feygin
JOSHUA FEYGIN, ESQ.
FL Bar No.: 124685
Email: Josh@sueyourdealer.com
**SUE YOUR DEALER – A LAW FIRM**
1930 Harrison St
208F
Hollywood, FL 33020
Tel: (954) 228-5674
Fax: (954) 697-0357
*Counsel for Plaintiff*